**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| SANTA CAROTA, LLC,<br><br>*Plaintiffs,*<br><br>vs.<br><br>INTERSTATE MEAT CO. INC., a Nevada Corporation dba STERLING PACIFIC MEAT CO.<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION No. 4:26-cv-00976-O |

**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, SANTA CAROTA, LLC, ("Plaintiff" or "Santa Carota"), files this Amended Complaint against Defendant, INTERSTATE MEAT CO. INC., a Nevada Corporation dba STERLING PACIFIC MEAT CO. ("Defendant" or "Sterling"). Plaintiff states the following:

## I. NATURE OF THE ACTION

1. Plaintiff is a family-owned business that raises cattle and supplies beef products to individuals and restaurants throughout the United States. Plaintiff raises its cattle on a unique diet of grass and carrots that gives Plaintiff's beef its distinctive taste and premium quality.

2. Plaintiff entered into an agreement with Eureka! Restaurant Group ("Eureka"), a prominent restaurant chain with locations throughout the United States, including Texas and California, to supply Eureka with Plaintiff's ground beef burger patties. Under that agreement, Plaintiff was to supply Eureka with 100% of the ground beef used at Eureka's restaurants. To facilitate their relationship, Plaintiff and Eureka used Interstate, doing business as Sterling Pacific Meat Co. ("Sterling"), to process and package Plaintiff's meat before delivery to Eureka.

3. Sterling packed and shipped ground beef in cases bearing labels reading "PACKED EXCLUSIVELY FOR: EUREKA RESTAURANTS 211630 / GROUND BEEF PATTIES /

MANUFACTURED BY: STERLING PACIFIC MEAT COMPANY," identified as Santa Carota product, and issued pricing letters on Sterling letterhead for the "Santa Carota" beef it was purportedly selling.

4. Consumers, distributors, and restaurant customers who purchased products identified as Santa Carota beef reasonably expected to receive genuine Santa Carota beef. Behind the label, however, Sterling was substituting its own cheaper beef into product sold and marketed as Santa Carota. Sterling's own internal communications acknowledge the switch, including an internal directive to "go back to Santa beef." Sterling captured the Santa Carota price premium while sourcing cheaper beef, and Santa Carota was harmed in its brand and its expected sales.

5. Sterling's conduct falsely designated the origin of the goods, created confusion regarding the source and authenticity of the products, impaired the goodwill associated with the Santa Carota brand, diverted sales, and enabled Sterling to profit from goodwill it neither created nor owned.

6. Sterling's conduct has been deliberate, knowing, and willful, entitling Santa Carota to all remedies available under the Lanham Act, 15 U.S.C. § 1125(a); common-law fraud under Texas law; and unjust enrichment under Texas law. Santa Carota seeks damages, disgorgement of Sterling's profits from its unauthorized use of the Santa Carota mark, restitution, exemplary damages, injunctive relief, attorneys' fees, and all other available relief.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a), because Plaintiff is a citizen of Texas through its member, Defendant is a citizen of Nevada, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business and delivers products to customers in this District, and because the acts complained of herein have caused injury to Plaintiff, whose sole member is a citizen of and is domiciled in Southlake, Texas.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff's member is a citizen of and is domiciled in Southlake, Texas, where Plaintiff has suffered substantial injury as a result of Defendant's unlawful conduct and delivered some of the mislabeled meat at issue in this case to customers in this District. Assignment to the Fort Worth Division is proper under Local Civil Rule LR 3.3.

## III. THE PARTIES

10. Plaintiff, Santa Carota, LLC is a limited liability company. Santa Carota's sole member is a citizen of and domiciled in Southlake, Texas, and so Santa Carota is a citizen of Texas.

11. Defendant Interstate is a Nevada Corporation doing business as Sterling Pacific Meat Co. with its principal place of business in Commerce, California and is a citizen of Nevada and California.

## IV. FACTUAL BACKGROUND

### A. Santa Carota's carrot finished beef program.

12. Santa Carota is a family owned and operated cattle ranch that raises Angus cattle through its distinctive carrot feed finishing, under which its cattle are raised on a specialized diet of grass and carrots. Santa Carota has built its business and the identity of its beef around that distinctive source and method of production.

13. Sterling is a Nevada corporation with its principal place of business in Commerce, California. Sterling holds itself out as a "world-class supplier of animal protein products to restaurants and food service distributors in the U.S. and abroad" and provides custom protein

processing, packaging, and distribution services for restaurant and food service customers throughout the United States.

14. The carrot finishing process is a defining characteristic of Santa Carota beef and a principal way Santa Carota distinguishes its product in the marketplace. Santa Carota markets its beef to restaurants, chefs, distributors, and consumers specifically as grass raised and carrot finished, and the SANTA CAROTA name identifies beef originating from Santa Carota and produced through that program.

15. Santa Carota has invested in developing the reputation of the SANTA CAROTA name around this distinctive product. Santa Carota markets its beef as a premium alternative to conventional beef and emphasizes its source, carrot finishing process, and resulting product characteristics as reasons restaurants and consumers seek out SANTA CAROTA beef.

16. Through its continuous use of the SANTA CAROTA name and mark, together with the reputation associated with its distinctive carrot fed program, Santa Carota has developed substantial goodwill and valuable trademark rights recognized by restaurants, distributors, and consumers. The value of the SANTA CAROTA mark is tied directly to the source and identity of the beef sold under that name and the reputation Santa Carota has developed for its product.

17. On August 1, 2017, Santa Carota filed U.S. Trademark Application Serial No. 87/551,981 for the SANTA CAROTA mark in connection with meat products in International Class 29.

18. On October 2, 2018, the United States Patent and Trademark Office issued U.S. Trademark Registration No. 5,576,997 for the SANTA CAROTA mark.

19. Since at least January 24, 2018, Santa Carota has continuously used the SANTA CAROTA name and mark in connection with the sale, marketing, promotion, and distribution of

its premium beef products throughout the United States. The SANTA CAROTA mark identifies Santa Carota as the source of its beef and distinguishes that product from beef originating from other producers and suppliers.

20. Beginning in 2019, Santa Carota and Eureka! Restaurant Group ("Eureka") entered into a business relationship under which Santa Carota supplied its premium ground beef product for use at Eureka's restaurants. Plaintiff is informed and believes, and based thereon alleges, that Eureka owns and operates restaurant locations, located throughout the United States. Eureka specifically identified Santa Carota on its restaurant menu and represented to its customers that its burgers were made with Santa Carota beef. The SANTA CAROTA name was used to identify the source of the beef being offered and sold to Eureka's customers.

21. Sterling played an integral role in the Eureka beef program for Santa Carota beef. Under that arrangement, Eureka communicated its anticipated product requirements to Sterling; Sterling ordered the corresponding quantities of beef from Santa Carota; and Santa Carota supplied its beef in response to Sterling's orders. Sterling then processed and packaged Santa Carota's beef into finished products and supplied those products for use at Eureka's restaurants. Through this course of conduct, the parties operated under the understanding that Eureka would purchase 100% of the ground beef used at its restaurants from Santa Carota.

22. Through this role, Sterling knew that the source of the beef mattered and that the finished product it processed and supplied was being identified and sold by Eureka as Santa Carota beef. Sterling also knew the actual source of the raw beef used to produce those products because Sterling controlled the receipt, processing, packaging, and supply of the beef for the Eureka program.

23. Santa Carota's branded beef products were sold and distributed in Texas as part of

Eureka's restaurant program. In 2021, while Sterling was processing and supplying Santa Carota beef products for Eureka, Eureka was serving Santa Carota beef in its Texas restaurants. Thus, Santa Carota beef products processed and supplied by Sterling for the Eureka! program were distributed into Texas and sold to consumers at Eureka's Texas locations.[1]

24. In furtherance of that relationship, Eureka engaged Sterling to process, package, and supply Santa Carota's ground beef to Eureka's restaurants. Under the parties' arrangement, Eureka communicated its anticipated product requirements to Sterling, and Sterling obtained Santa Carota's ground beef, processed the product, and supplied it to Eureka.

25. From approximately 2020 through 2024, Santa Carota supplied Sterling with substantial quantities of premium ground beef for Eureka's restaurants in response to Sterling's orders. Sterling packed and shipped product in cases bearing labels stating: "PACKED EXCLUSIVELY FOR: EUREKA RESTAURANTS 211630 / GROUND BEEF PATTIES / MANUFACTURED BY: STERLING PACIFIC MEAT COMPANY." Sterling further issued pricing letters on Sterling letterhead identifying the product as containing only "Santa Carota Blend" beef, reflecting the premium price commanded by the Santa Carota product.

26. Unbeknownst to Santa Carota or Eureka, beginning no later than 2021, Sterling began supplying beef obtained from other sources while continuing to identify, market, label, package, invoice, and otherwise represent the product as SANTA CAROTA beef. Sterling did so without Santa Carota's knowledge or authorization.

27. Sterling continued using the SANTA CAROTA name and mark in connection with products supplied to Eureka after those products no longer consisted exclusively of genuine Santa

---

[1] See https://www.fsrmagazine.com/industry-news/eureka-launch-american-spirit-cocktail-limited-time/ (last visited August 21, 2026)

Carota beef. Sterling continued representing those products as SANTA CAROTA beef despite supplying substituted beef.

28. In early 2024, Eureka advised Santa Carota that it had received substantially more beef from Sterling than Sterling had purchased from Santa Carota during the same period. The discrepancy revealed that the volume of product Sterling had supplied to Eureka as Santa Carota beef materially exceeded the amount of genuine Santa Carota beef Sterling had obtained to produce that product.

29. When confronted with the discrepancy, Sterling admitted that it had obtained cheaper, lesser quality beef from other suppliers and mixed that beef with Santa Carota's premium product before supplying it to Eureka. Sterling's own internal beef volume spreadsheets show that the amount of burger patties Sterling was providing to Eureka as "Santa Carota" beef materially exceeded the volumes of Santa Carota beef supplied to Sterling over corresponding periods, further confirming that a substantial portion of product sold, labeled, and invoiced as "Santa Carota" was not Santa Carota beef.

30. Sterling nevertheless continued to use the Santa Carota identity in connection with product containing beef from other sources. In doing so, Sterling obtained the commercial benefit of the SANTA CAROTA name and the goodwill associated with Santa Carota's product while supplying beef that did not originate exclusively from Santa Carota.

31. Sterling itself identified the product it processed and supplied to Eureka as the "Santa Carota Blend." The Santa Carota Blend was understood and represented as a product made from Santa Carota beef. Neither Santa Carota nor Eureka authorized Sterling to include beef from other suppliers in the Santa Carota Blend or to supply such product as Santa Carota beef. Sterling

used beef obtained from other suppliers in the Santa Carota Blend while continuing to identify, process, invoice, and supply the finished product under the Santa Carota identity.

32. At no time did Santa Carota authorize Sterling to use the SANTA CAROTA name or mark in connection with products that were not genuine Santa Carota beef. Santa Carota never authorized Sterling to use its name, mark, product identity, or goodwill to identify or sell beef obtained from other suppliers as Santa Carota beef.

33. Sterling's conduct deprived Santa Carota of control over the products being represented and sold under the Santa Carota identity. Beef that Santa Carota did not exclusively supply and over which Santa Carota had no control was placed into commerce and supplied to Eureka under the identity Santa Carota had developed for its own product.

34. As a result of Sterling's conduct, Santa Carota suffered substantial damages, including lost sales, lost business opportunities, injury to the goodwill associated with the SANTA CAROTA name and mark, and damage to its business reputation. Sterling likewise realized substantial profits by continuing to market and supply products under the SANTA CAROTA name while supplying substituted beef.

## CAUSES OF ACTION

### COUNT I –Trademark Infringement, False Designation of Origin, and False Association Under 15 U.S.C. §§ 1114 and 1125(a)(1)(A))

35. Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

36. At the time of Defendant's misconduct, Plaintiff owned and used the name, mark, product identity, goodwill, and business reputation associated with its premium beef product. Plaintiff's name and product identity had value because Eureka understood Plaintiff's product to

be a premium product that came from Plaintiff, was supplied by Plaintiff, and carried Plaintiff's quality and reputation.

37. Defendant knew Plaintiff's name, mark, product identity, goodwill, and reputation were associated with Plaintiff's premium beef product. Defendant also knew Eureka purchased Plaintiff's product because of that source, quality, and reputation.

38. Defendant used Plaintiff's name, mark, product identity, goodwill, and reputation in commerce to sell, substitute, process, invoice, deliver, and pass off beef product that was not Plaintiff's product. Defendant did not merely supply the wrong product. Defendant used Plaintiff's commercial identity so Eureka would believe it was still receiving Plaintiff's premium product, when it was not.

39. Defendant's conduct was false and misleading because Defendant represented, suggested, and allowed Eureka to believe that the beef product being processed, supplied, delivered, or sold was Plaintiff's product, originated with Plaintiff, was supplied by Plaintiff, was approved by Plaintiff, or had the same quality and characteristics associated with Plaintiff's product. In reality, Defendant was mixing, substituting, and passing off other cheaper and lower quality beef product in place of Plaintiff's product in order to charge Eureka for a higher volume of beef than Santa Carota was actually supplying.

40. In other words, Defendant duped Eureka into believing it was receiving Plaintiff's premium product while Defendant used Plaintiff's name, mark, product identity, goodwill, and reputation to sell product that was not Plaintiff's. Had Santa Carota known the actual volumes of beef Eureka was ordering; it would have supplied those amounts to Sterling. Plaintiff is informed and believes, and based thereon alleges, that Defendant reaped significant profits from this misconduct.

41. Defendant's conduct was likely to cause confusion, mistake, or deception as to the source, origin, affiliation, sponsorship, approval, nature, characteristics, and quality of the beef product supplied to Eureka.

42. Defendant's conduct directly and proximately damaged Plaintiff. Indeed, Defendant's conduct caused Plaintiff to lose sales of thousands pounds of ground beef that Plaintiff would have otherwise sold to Eureka and damaged Plaintiff's reputation as a provider of premium beef.

43. Defendant's conduct constitutes trademark infringement under 15 U.S.C. § 1114 because Defendant used Plaintiff's registered mark, or a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered mark, in commerce and in connection with the sale, offering for sale, distribution, processing, invoicing, or delivery of goods in a manner likely to cause confusion, mistake, or deception.

44. Defendant's conduct also constitutes false designation of origin and false association under 15 U.S.C. § 1125(a)(1)(A) because Defendant used Plaintiff's name, mark, product identity, goodwill, and commercial reputation in commerce in a manner likely to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's goods.

45. Defendant's conduct has resulted in damage to Plaintiff in the form of lost business opportunities, lost sales, harm to goodwill, harm to business reputation, customer confusion, and loss of control over Plaintiff's name, mark, product identity, and commercial reputation.

46. Plaintiff is entitled to all remedies available under the Lanham Act, including actual damages, Defendant's profits, enhanced damages, injunctive relief, costs, attorneys' fees, and statutory damages to the extent permitted by law.

**COUNT II –Trademark Counterfeiting Under 15 U.S.C. §§ 1114 and 1117(b)**

47. Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

48. At the time of Sterling's misconduct, Plaintiff owned and used the federally registered SANTA CAROTA trademark in connection with its premium beef product. Plaintiff's SANTA CAROTA trademark identified beef that came from Plaintiff and carried Plaintiff's quality, goodwill, and business reputation.

49. Sterling knew the SANTA CAROTA trademark identified Plaintiff's premium beef product. Sterling also knew the product sold under the SANTA CAROTA trademark was supposed to be made from Plaintiff's beef, and that the trademark did not identify commodity meat products, beef obtained from other sources, or Plaintiff's beef blended with other, lesser products.

50. Sterling used the SANTA CAROTA trademark in commerce to sell, process, invoice, deliver, and pass off beef products that included commodity meat products, beef obtained from other sources, and Plaintiff's beef blended with other, lesser products. Sterling did not merely substitute a different product. Sterling used Plaintiff's identical registered trademark on the substituted and blended products so Eureka would believe it was still receiving Plaintiff's premium beef product when it was not.

51. Sterling's use of the SANTA CAROTA trademark infringed Plaintiff's registered trademark in violation of 15 U.S.C. § 1114(1)(a). Sterling used Plaintiff's identical registered trademark on products that were not the Santa Carota product represented by the mark, causing confusion and deception as to the source, origin, sponsorship, and approval of those products.

52. Sterling used Plaintiff's federally registered SANTA CAROTA trademark to pass off beef product as Plaintiff's premium beef product while knowing the product contained other beef products of lesser quality. Sterling continued using Plaintiff's trademark to identify, sell, and

deliver that product as Santa Carota beef so Eureka would believe it was receiving Plaintiff's premium product. Sterling was not merely using Plaintiff's name in connection with another product. Sterling knowingly used Plaintiff's registered trademark to sell a different, lesser product as genuine Santa Carota beef.

53. Sterling's conduct has resulted in damage to Plaintiff in the form of lost business opportunities, lost sales, harm to goodwill, harm to business reputation, customer confusion, and loss of control over Plaintiff's name, mark, product identity, and commercial reputation.

54. Plaintiff is entitled to all remedies available under the Lanham Act, including actual damages, Sterling's profits, enhanced damages, injunctive relief, costs, attorneys' fees, and statutory damages to the extent permitted by law. Because Sterling intentionally used Plaintiff's registered trademark knowing it was counterfeit, Plaintiff is also entitled to treble damages and attorneys' fees under 15 U.S.C. § 1117(b).

**COUNT III – Common Law Fraud (Texas)**

55. Plaintiff incorporates each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

56. Sterling made material representations to Santa Carota, including representations that Sterling was processing, packing, and shipping genuine Santa Carota beef under the parties' course of dealing; that the case labels bearing the Santa Carota identification, and pricing letters on Sterling letterhead identifying the product as the Santa Carota beef, accurately identified the source and content of the product being sold; and that Sterling was performing the arrangement on an exclusive basis with respect to Santa Carota beef processed for Eureka.

57. Those representations were false. Sterling was substituting non-Santa Carota beef into product identified, labeled, and sold as Santa Carota.

58. The representations were material. The Santa Carota name and the exclusivity of the supply arrangement were the reasons Santa Carota committed weekly supply and pricing terms and accepted the risks of a Sterling-processed program in the first place; had Santa Carota known the truth, it would not have continued to supply Sterling on the same terms, would not have permitted Sterling's continued use of the Santa Carota Mark on Sterling's product, and would have taken steps to protect its brand and customer relationship.

59. Sterling knew the representations were false when made, or made them recklessly without any knowledge of their truth. Sterling's internal communications—including the directive to "go back to Santa beef," Sterling's fat-content attributions for the substituted product, and the volume records reflected on the native "Eureka weight and cases.xlsx" spreadsheet—confirm Sterling's actual knowledge of the substitution.

60. Sterling intended that Santa Carota relies on the representations. Sterling made them in the course of an ongoing supplier relationship, on Sterling's own letterhead, and on product Sterling was shipping to a shared customer, with the intent that Santa Carota continues supplying beef, honor pricing, and refrain from disturbing Sterling's customer channel.

61. Santa Carota justifiably relied on Sterling's representations. Santa Carota continued to supply beef, committed weekly volumes and pricing, and permitted Sterling's use of the Santa Carota Mark on Sterling's case labels and pricing letters in reliance on Sterling's representations.

62. Sterling's fraud proximately caused Santa Carota's injury, including lost margin on the volumes Sterling sold as Santa Carota without paying Santa Carota for the underlying beef, lost sales resulting from the collapse and termination of the Eureka relationship, harm to Santa Carota's reputation and goodwill, and dilution of the Santa Carota Mark.

63. Sterling's conduct was intentional, knowing, and undertaken with conscious indifference to Santa Carota's rights. Santa Carota is entitled to actual damages and exemplary damages under Chapter 41 of the Texas Civil Practice and Remedies Code, together with pre- and post-judgment interest and costs.

**COUNT IV – Unjust Enrichment (Texas)**

64. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

65. Sterling obtained substantial benefits at Santa Carota's expense by, among other things, capturing the Santa Carota price premium on product that was not Santa Carota beef; exploiting the Santa Carota Mark and Santa Carota's goodwill to build and maintain the Eureka customer relationship; and reducing Sterling's own input costs while continuing to invoice, label, and sell product as Santa Carota.

66. Sterling obtained those benefits through fraud, the taking of an undue advantage, and conduct that in equity and good conscience Sterling should not be permitted to retain. The measure of Sterling's unjust enrichment includes, at a minimum, the differential between the Santa Carota price and the price of the substituted commodity beef, multiplied by the volumes Sterling sold as Santa Carota during the relevant period, together with any additional profits Sterling derived from its unauthorized use of the Santa Carota Mark.

67. Santa Carota is entitled to restitution and disgorgement of Sterling's unjust gains, together with pre- and post-judgment interest and costs.

## VI. CONDITIONS PRECEDENT

68. All conditions precedent to Santa Carota's recovery have been performed, have occurred, or have been waived.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the entry of judgment in its favor and against Defendant as follows:

a. Direct, actual, and compensatory damages to be proven at trial;

b. Defendant's profits wrongfully obtained through the use of Plaintiff's name, mark, product identity, goodwill, and business reputation;

c. Enhanced and statutory damage as permitted by the Lanham Act;

d. Punitive and exemplary damages against Defendant;

e. For prejudgment and post-judgment interest as provided by law;

f. For costs of suit, including reasonable attorneys' fees; and

g. For such other and further relief as the Court may deem appropriate, proper and equitable.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, on its own behalf and on behalf of all others similarly situated, hereby demand a trial by jury.

Respectfully submitted,

***/s/ Vincent P. Circelli***

Vincent P. Circelli
State Bar No. 24058804
vcircelli@dclaw.com
Preston J. Dugas III
State Bar No. 24050189
pdugas@dclaw.com
Sarah Arroyo
State Bar No. 24138756
sarroyo@dclaw.com
**DUGAS & CIRCELLI, PLLC**
4800 Bryant Irvin Ct.
Fort Worth, Texas 76107
Telephone: (817) 817-7000
Facsimile: (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**